UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NICHOLAS FERGUSON,

Plaintiff,

vs.

CORECIVIC CORPORATION OTAY MESA DETENTION CENTER, DR. PURVIANCE, DR. UCHE, SERGEANT RODIL, CHRISTOPHER LAROSE, LIEUTENANT AYON, UNNAMED CORRECTIONAL OFFICERS 1–3,

Defendants.

Case No.:  3:26-cv-1689-DMS-MMP

**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**

**(2) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

Plaintiff Nicholas Ferguson ("Plaintiff" or "Ferguson"), a federal prisoner proceeding pro se,[1] has filed a civil rights action, along with a motion to proceed *in forma*

---

[1] The Court takes judicial notice of Plaintiff's criminal case, *United States v. Ferguson*, Case No. 3:11-cr-0805-JH (S.D. Cal.). *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (stating a court may take judicial notice of any "proceedings in other courts, both within and without the federal judicial system"). Ferguson was taken into federal custody on November 17, 2025 for a violation of his supervised release. *See Ferguson*, Case No. 3:11-cr-0805-JH, ECF Nos. 144, 145.

1

*pauperis* ("IFP"). ECF Nos. 1, 2. In his Complaint, Ferguson alleges Defendants violated his constitutional rights under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 388 (1971). *See* ECF No. 1. For the reasons discussed below, the Court grants Plaintiff's IFP motion and dismisses the complaint without prejudice.

## I.    IFP MOTION

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

To proceed IFP, prisoners must "submit an affidavit that includes a statement of all assets they possess," as well as a "certified copy of their trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2) (citation modified). Using this financial information, the court assesses an initial partial filing fee which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023).  The additional $55 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

26cv1689-DMS-MMP

upfront, they remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2).

In support of his IFP Motion, Ferguson has provided a signed copy of his prison trust account statement which reflects an average monthly balance of $114.52, average monthly deposits of $200.00, and an available account balance of $0.00. ECF No. 2 at 2. Accordingly, the Court **GRANTS** Plaintiff's IFP motion. Because Plaintiff has no funds on account, the Court assesses no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that a prisoner should not be prohibited from bringing a civil action or appealing a civil action solely because he has no assets and no means to pay the initial partial filing fee). The facility where Plaintiff is detained must collect the full balance of the $350 fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II.    SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)

### A.    Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

26cv1689-DMS-MMP

**B.    Plaintiff's Allegations**

The allegations in Ferguson's Complaint concern incidents which occurred while he was in federal custody at Otay Mesa Detention Facility ("OMDF"),[3] which is operated by CoreCivic, a private corporation. ECF No. 1 at 7, 9.

Plaintiff alleges that on February 18, 2026, medical staff "forced" him to sign a contract in order to keep receiving his medication (Suboxone), as part of his medication assisted treatment ("MAT") for addiction. *Id.* at 7, 10. Ferguson states Suboxone is supposed to be "absorbed under the tongue" but OMDF staff administered the medication in a manner contrary to the manufacturer's directions—by crushing it, putting it in water and having Ferguson drink the mixture. *Id.* at 7. As a result, Ferguson states he has suffered "severe pain of withdrawal." *Id.*

Ferguson further alleges that on February 21, 2026 or February 22, 2026, Sergeant Rodil was escorting Ferguson out of his cell. *Id.* at 9. Plaintiff, who was handcuffed, turned to tell Rodil that he was twisting his wrist and causing him pain and Rodil responded by "throw[ing] [Plaintiff] into the wall," causing Plaintiff to hit his jaw and forehead. *Id.* Rodil then threw Plaintiff onto the floor, causing an injury to Plaintiff's pinky finder, which "felt broke." *Id.* A dentist later examined Ferguson and told him he "most likely [had] nerve damage." *Id.* at 9, 16.

Ferguson alleges that on another occasion three unidentified officers opened his cell door without first handcuffing him, which is against CoreCivic policy. *Id.* at 6. One officer stated, "Please come close and do something we'll beat your ass then choke your ass dead!" *Id.* The officers then grabbed Plaintiff's food tray and left his cell laughing. *Id.*

On March 5, 2026, Lieutenant Ayon "antagoniz[ed]" Ferguson by cursing at him and reaching through the "feeding slot multiple times, hitting [Plaintiff] once in the leg causing a large bruise. *Id.* at 6. Later that same evening, Ayon "forced" Plaintiff to have an

---

[3] Since filing his Complaint, Ferguson has been transferred to the Metropolitan Correctional Center ("MCC") in San Diego, California. *See* ECF No. 4 at 2.

26cv1689-DMS-MMP

x-ray taken of his stomach because officers suspected Plaintiff had hidden contraband in his anus. *Id.* at 6, 12. Officers also threatened to put Plaintiff in a "dry cell." *Id.* at 6. At some point that evening, Ferguson was taken to Paradise Valley Hospital and an x-ray was taken of his abdomen but "nothing was found." *Id.* at 12.

Ferguson further alleges OMDF officials "took money [his] family [had] sent him," approximately $300, from his trust account unlawfully. *Id.* at 15. Officials told Ferguson it was for "restitution," but Ferguson states it was not "court ordered." *Id.*

**C.     Discussion**

In his Complaint, Ferguson names nine defendants: OMDF Warden LaRose, CoreCivic Corporation, Dr. Uche, Dr. Purviance, Sergeant Rodil, Lieutenant Ayon, and three unnamed CoreCivic correctional officers. *See* ECF No. 1 at 1–4. He raises seven claims under both 42 US.C. § 1983 and *Bivens*, 403 U.S. 388, alleging violations of the Eighth Amendment and the Due Process Clause. *Id.* at 3.

**1.     42 U.S.C. § 1983**

First, to the extent seeks to raise constitutional claims pursuant to 42 U.S.C. § 1983, ECF No. 1 at 1, they must be dismissed. "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Plaintiff is a federal prisoner whose claims arose while he was held at OMDC, a for-profit detention facility privately-owned and operated by CoreCivic under federal contract, and it appears all Defendants are OMDF staff. *See* ECF No. 1 at 2–4. Thus, Ferguson fails to allege any Defendant acted under color of *state* law. As such, he necessarily fails to state a claim under § 1983. *Tsao*, 698 F.3d at 1138; *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) ("Section 1983 . . . provides no right of action against federal (rather than state) officials."). And to the extent Plaintiff seeks recovery from individual employees of a private detention facility under contract with the federal government, his constitutional claims must be brought in federal court, if at all, pursuant to *Bivens*. *Agyeman*

26cv1689-DMS-MMP

*v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004) (stating suit against individual employees of a private facility under contract with the federal government had to be brought as a *Bivens* action). Therefore, because Plaintiff is not suing state actors, his claims raised pursuant to § 1983 are dismissed.

**2.    *Bivens***

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). *Bivens*, however, provides a judicially recognized remedy for constitutional violations committed by federal actors only in limited circumstances.

Since *Bivens* was decided, the Supreme Court has expressly recognized an implied cause of action in only three types of cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. Apart from these cases, the Court has "consistently refused to extend *Bivens* liability" to other contexts. *Malesko*, 534 U.S. at 68.

The Supreme Court has "clarified [a] two-step framework that courts must use to decide whether to recognize an implied cause of action against federal agents for constitutional violations." *Schwartz v. Miller*, 153 F.4th 918, 926 (9th Cir. 2025) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135–37 (2017)). The first step requires courts to ask whether the case arises in a new context, i.e., "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id*. (citing *Ziglar*, 582 U.S. at 139.) "If the case does differ, then courts must consider whether 'there are special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. (quoting *Ziglar*, 582 U.S. at 136). "This second step focuses on whether the Judiciary is well suited,

6

absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*.

a.    *Official Capacity* <u>*Bivens*</u> *Claims*

As an initial matter, while Ferguson sues all Defendants in both their individual and official capacities, *see* ECF No. 1 at 2–4, his official-capacity *Bivens* claims must be dismissed. "A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted). "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id*. (citation omitted). "There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted). Accordingly, the Court dismisses Plaintiff's official-capacity *Bivens* claims against all Defendants. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

b.    *CoreCivic Corporation and Warden LaRose (Claims Five and Seven)*

Plaintiff fails to state *Bivens* claims against Defendants CoreCivic and LaRose. In Claim Five, Ferguson states only that "Warden LaRose and Corecivic Corporation had authority over everything and allowed [it] to occur and condoned it." ECF No. 1 at 13. And in Claim Seven, Plaintiff alleges CoreCivic improperly deducted approximately $300 from his trust account for restitution. *Id.* at 15.

First, Ferguson cannot state a *Bivens* claim against CoreCivic because such claims are not available against private corporations acting under contract with the federal government. *See Malesko*, 534 U.S. at 63–64, 74 (declining to apply *Bivens* to private corporations); *Agyeman*, 390 F.3d at 1103 ("[T]o the extent that Agyeman sought to hold Corrections Corporation itself liable, the case could not be brought under [*Bivens*], since

Corrections Corporation is a private corporation."); *see also FDIC v. Meyer*, 510 U.S. 471, 484–86, (1994) (concluding no *Bivens* action may be brought against a federal agency).

And to the extent Plaintiff alleges Defendant LaRose is liable because, as OMDF Warden, he "had authority over everything and allowed the [alleged constitutional violations] to occur," ECF No. 1 at 13, he has not stated a claim. "In the limited settings where *Bivens* does apply, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676 (citations omitted). "[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others . . . because "[t]he purpose of *Bivens* is to deter the officer." *Ziglar*, 582 U.S. at 140 (internal quotation marks and citation omitted). "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id*. (citing *Iqbal*, 556 U.S. at 676). Thus, in order for Ferguson to state a claim against Warden LaRose, he must plausibly allege LaRose violated his rights through his own actions. *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of respondeat superior, but must instead [a plaintiff must] plead that a supervisor, by her 'own individual actions,' violated the Constitution."). Therefore, Ferguson fails to state a *Bivens* claim against Defendants CoreCivic and LaRose and as such, Claims Five and Seven[4] are dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

---

[4] In addition, it is unlikely Plaintiff could state a due process claim for deprivation of property under *Bivens* against any individual. A due process claim of deprivation of property is unlike the issues the Supreme Court has decided may proceed under *Bivens*. *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) ("[N]either the Supreme Court nor [the Ninth Circuit] ha[s] expanded *Bivens* in the context of a prisoner's . . . Fifth Amendment procedural due process claims."). Indeed, in at least one unpublished decision, the Ninth Circuit stated that the deprivation of property involved a new *Bivens* context and is not an actionable claim. *See Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023); *accord Panschow v. Murillo*, 2020 WL 292182, at *3 (C.D. Cal. Jan. 17, 2020) (stating that where federal prisoner brought Fifth Amendment claim concerning a deprivation of property, holding "any Fifth Amendment due process claim by plaintiff lacks an arguable basis in law because it would require a disfavored extension of *Bivens*"); *Douglas v. BOP Dir.*, 2019 WL 6170734, at *2–3 (C.D. Cal. Nov. 20,

26cv1689-DMS-MMP

### c.   Eighth Amendment Medical Care (Claim Two)

In Claim Two, Ferguson appears to raise a *Bivens* claim alleging his Eighth Amendment right to adequate medical care was violated by CoreCivic employees Dr. Uche and Dr. Purviance.[5] ECF No. 1 at 7. Specifically, Ferguson alleges he was improperly administered his Suboxone medication by dissolving it in water, when it should be taken by placing it under the tongue. *Id.* at 7, 10. Plaintiff, however, may not proceed with Eighth Amendment medical care claim against these two defendants under *Bivens.* The Supreme Court has stated: "Where . . . a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot simply imply a *Bivens* remedy in such a case." *Minneci v. Pollard*, 565 U.S. 118, 131 (2012). Therefore, to the extent Plaintiff raises an Eighth Amendment claim regarding inadequate medical care against Defendants Uche and Purviance, privately employed personnel, he cannot state a *Bivens* claim. *See Valdovinos-Blanco v. Adler*, 585 F. App'x. 586, 587 (9th Cir. 2014) (affirming *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2) of claims precluded by *Minneci*); *Karboau v. Clark*, 577 F. App'x. 678, 679 (9th Cir. 2014) (affirming dismissal of Eighth Amendment claims against individual employees of GEO Group, Inc., because the exclusive remedy is pursuant to state tort law).

---

2019) (finding federal prisoner could not proceed with Fifth Amendment procedural due process claim under *Bivens* with respect to deprivation of property in light of *Abbassi*); *Childress v. Palmer*, 2018 WL 4282601, at *3 (S.D. Cal. Sept. 7, 2018) ("As stated above, the Supreme Court has not expanded *Bivens* to include a Fifth Amendment claim based on procedural due process arising from a deprivation of property. Therefore, Plaintiff's claims present a 'new context' under *Abbasi*.").

[5] While Plaintiff lists Uche and Purviance as Defendants as to Claim Two, the factual allegations contain no reference to any specific conduct by either Uche or Purviance. *See* ECF No. 1 at 7.

9

26cv1689-DMS-MMP

Accordingly, Ferugson cannot state an Eighth Amendment medical care claim under *Bivens* against Defendants Uche and Purviance and as such, Claim Two is dismissed for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

> d.    *Eighth Amendment Excessive Force (Claims One and Three)*

In Claims One and Three, Plaintiff alleges CoreCivic correctional staffers Rodil and Ayon (respectively) violated his Eighth Amendment right by using excessive force against him. The Ninth Circuit has specifically declined to extend a *Bivens* remedy to an Eighth Amendment excessive force claim. *Chambers v. C. Herrera*, 78 F.4th 1100, 1107 (9th Cir. 2023) (stating "even plausible allegations could not constitute a *Bivens* claim for excessive force under *Egbert [v. Boule*, 596 U.S. 482, 484 (2022)]"); *see also Williams v. Baker*, No. 1:16-cv-1540-ADA-HBK, 2023 WL 7323332, at *4 (E.D. Cal. Nov. 7, 2023), report and recommendation adopted, No. 1:16-cv-01540-NODJ-HBK (PC), 2024 WL 1333172 (E.D. Cal. Mar. 28, 2024), appeal dismissed, No. 24-3525, 2024 WL 4063618 (9th Cir. June 20, 2024) ("[B]inding Ninth Circuit case law now holds that under *Egbert*, this Court may not extend a *Bivens* remedy to an Eighth Amendment excessive use of force claim."). The Ninth Circuit determined that an Eighth Amendment *Bivens* claim "rooted in excessive force" "represents a new *Bivens* context because it is distinct from the three actions recognized in *Bivens*, *Davis*, and *Carlson*." *Chambers*, 78 F.4th at 1107; *see also Hunt v. Matevousian*, No. 18-17464, 2023 WL 8064536, at *1 (9th Cir. Nov. 21, 2023) ("The district court properly dismissed [plaintiff's] Eighth Amendment claims for excessive force and failure to protect because a *Bivens* remedy is unavailable for such claims."). Further, the Ninth Circuit identified special factors that foreclosed a *Bivens* excessive force claim by stating, "[b]ecause *Carlson* involved an entirely different claim, it provides no judicial guidance on how prison officials should handle excessive force claims" and "to expand *Bivens* here would risk the exact 'disruptive intrusion by the Judiciary' that *Ziglar* forecloses." *Chambers*, 78 F.4th at 1108 (quoting *Ziglar*, 582 U.S. at 140).

Therefore, Ferguson has failed to state an Eighth Amendment excessive force claim under *Bivens* and as such, Claims One and Three are dismissed. *See* 28 U.S.C.

26cv1689-DMS-MMP

§§ 1915(e)(2)(B)(ii) and 1915A(b).

      *e.*    *Contraband X-Ray and Inappropriate Comments (Claim Four)*

In Claim Four, Ferguson alleges he was "forced" to submit to an x-ray of his abdomen after Defendant Ayon falsely accused him of hiding contraband inside his body. ECF No. 1 at 6, 12. He also alleges Ayon made "sexual comments while laughing at [him]" and threatened to place Plaintiff in a "dry cell" if he did not agree to the x-ray. *Id.* at 12. While not entirely clear, Plaintiff appears to allege this amounted to a violation of the Eighth Amendment. As discussed above, however, such a claim presents a "new context" *See Chambers*, 78 F.4th at 1107, 1110 (declining to recognize a cause of action under *Bivens* for an inmate's Eighth Amendment claims alleging excessive force and failure to protect). But even if the Court were to presume *Bivens* relief were possible, Plaintiff fails to state sufficient facts to show how being compelled to have an x-ray taken of his abdomen was so egregiously harmful as to violate the Eighth Amendment. Nor are Plaintiff's vague allegations regarding Ayon's "sexual comments" sufficient to state a plausible Eighth Amendment claim. *See Watison*, 668 F.3d at 1112–13 (holding that humiliation from brief incident of alleged sexual harassment did not rise to level of severe psychological pain required to state Eighth Amendment claim).

Furthermore, to the extent the claim can be liberally construed under the Fourth Amendment, it also fails, regardless of whether *Bivens* relief is available. Prisoners retain only "a limited right to bodily privacy" under the Fourth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir. 1988). It is well-established, for instance, that strip searches generally do not violate a prisoner's Fourth Amendment rights. *Id.*; *accord Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997). Nor do routine visual body cavity searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *accord Thompson*, 111 F.3d at 700. Given these more invasive methods do not amount to a violation of the Fourth Amendment in the prison context, the Court finds the allegation of contraband search of a prisoner via x-ray falls well short of stating a plausible Fourth Amendment claim. In sum, Plaintiff has

failed to state a claim against Defendant Ayon and Claim Four is dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

> f.      *Unnamed Defendants 1–3 (Claim Six)*

Finally, in Claim Six, Ferguson alleges three unnamed CoreCivic correctional officers opened his cell door without cuffing him, which is against CoreCivic policy. ECF No. 1 at 6, 12. These officers also taunted Plaintiff, stating, "Please come close and do something we'll beat your ass then choke your ass." *Id*. at 6. The unnamed officers then took Plaintiff's food tray and left his cell "laughing." *Id*.

Although the use of fictitiously unnamed "Doe" defendants is generally not favored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), amendment is allowed to substitute true names for fictitiously named defendants, *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989). Here, however, Ferguson has failed to make any specific allegations against any separately identified unnamed officer. Instead, he refers to unidentified officers collectively. If Plaintiff wants to state claims against unknown defendants, he must identify them individually (i.e. Doe 1, Doe 2, etc.) and specify what each unknown individual did. And he "must allege sufficient facts to show how each doe defendant individually violated his constitutional rights." *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)). Because plaintiff has not identified any specific action taken by any separately identified Doe defendant, and he also fails to identify a constitutional basis for his *Bivens* claim, Plaintiff has failed to state any claim against the three unnamed Defendants.

In addition, even assuming Plaintiff had alleged an Eighth Amendment violation, and further assuming *Bivens* relief were possible, he cannot state a claim because "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons of which we do not approve, but which do[es] not violate the Eighth Amendment." *Watison*, 668 F.3d at 1113 (9th Cir. 2012) (internal quotation marks omitted). A mere naked threat does not violate the Eighth Amendment. *See Gaut v. Sunn*,

12

810 F.2d 923, 925 (9th Cir. 1987) (holding that "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong"); *Ferguson v. Pagati*, No. 12-cv-0653-VBF-DTB, 2013 WL 3989426, at *5 (C.D. Cal. Aug. 1, 2013) ("[T]he Court finds no authority for the proposition that allegations of threats of physical violence, without more, can suffice to state a *Bivens* claim). Therefore, Plaintiff has failed to state a claim against the three unnamed Defendants and as such, Claim Six is dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

**D.     Leave to Amend**

Given Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### III.     CONCLUSION AND ORDER

For reasons discussed above, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2.     **DIRECTS** the Warden of the Metropolitan Correctional Center, their designee, or any agency later having custody, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Warden, Metropolitan Correction Center, 808 Union Street, San Diego, California 92101.

4.     **DISMISSES** Plaintiff's Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) without prejudice.

26cv1689-DMS-MMP

5. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: June 26, 2026

Hon. Dana M. Sabraw
United States District Judge

14

26cv1689-DMS-MMP